# NATIONAL UNION *v.* THOMAS.

LIFE INSURANCE; BY-LAWS; SUICIDE; PROOF OF DEATH; WAIVER; EVIDENCE; BURDEN OF PROOF; CORONER'S JURY, VERDICT OF; OPINION EVIDENCE.

1. A condition in the by-laws of a mutual benefit association that no benefit shall be paid on the death of a member in event that he shall commit suicide, whether sane or insane, within two years of his admission to membership, is a valid one and binding upon his beneficiaries; but the burden of proving suicide is upon the association.

2. Where the by-laws of such an association provide that on the death of a member, a committee of the governing body shall make a report upon the cause of death and surrounding circumstances, there is no implied obligation on the part of a beneficiary to do more than give notice of the death of the member, and possibly to make a particular statement of the time, place and circumstances of death, if such a statement is demanded.

3. And a report so made by such a committee is not admissible in evidence against a beneficiary in a suit against the association to recover on a benefit certificate.

4. A distinct denial of liability by the insurer and refusal to pay a policy upon the ground that no contract of insurance exists, is a waiver of a condition requiring proof of loss or death; it is equivalent to a declaration that the insurer will not pay though the proof be furnished.

5. To justify a trial court in sustaining a motion to direct a verdict for the defendant in a suit on a certificate of insurance, in which suit the defence is that the insured committed suicide, the proof must be so certain and conclusive that all reasonable men would necessarily infer therefrom that the death was the result of design instead of accident.

6. The proof in such a case considered and determined not to be so

conclusive of suicide as to justify the trial court in directing a verdict for the defendant.

7. Where in such a suit the insurer admits that the insured had paid all dues and assessments, proof of the payment of the last assessment and a receipt given to the beneficiary after the insured's death is immaterial, but the admission of the receipt by the trial court with an instruction to the jury that it did not constitute evidence of a waiver of the defence of suicide which had been interposed by the insurer, will not on appeal be held to be reversible error at the instance of the defendant; nor under such circumstances will the refusal of the trial court to reinstruct the jury at the close of the testimony to the same effect be held to be error.

8. Whether in a suit brought on a policy of insurance where the defence is that the insured committed suicide, the verdict of a coroner's jury approved and entered of record by the coroner, is admissible as evidence of the manner and cause of death, *quære.*

9. The report of the coroner acting as such and as health officer is not admissible in evidence in such a case when not based upon the verdict of a jury regularly empaneled.

10. Nor in such a case is the opinion of the coroner and another surgeon who saw the body of the deceased shortly after death as to whether or not he committed suicide, admissible in evidence.

No. 609. Submitted November 3, 1896. Decided February 25, 1897.

HEARING on an appeal by the defendant from a judgment on verdict in an action on a certificate of insurance. *Affirmed.*

The COURT in its opinion stated the case as follows :

This is an appeal from a judgment on a life insurance certificate. The certificate, issued November 27, 1891, certified that Ernest F. Thomas was a third-rate beneficiary member of State, War and Navy Council, No. 201, National Union, and, subject to the truth of certain representations of said member and certain other conditions, agreed to pay to his wife, Josephine B. Thomas, out of its benefit fund, the sum of $3,000 upon proof of his death and the surrender of the certificate.

The declaration, in the ordinary form, alleged the facts of membership and the death of said Ernest F. Thomas, in good standing, on August 29, 1893. It further charged

that defendant had full knowledge of said death, and, waiving further proof thereof, refused payment of said certificate.

Defendant answered with a plea of *non assumpsit*, and a special plea alleging that, by the terms of the contract, no benefit whatever should be paid on the death of said member should he commit suicide, whether sane or insane, within two years after becoming a beneficial member; and that he did commit suicide within said two years, wherefore plaintiff had no cause of action.

Plaintiff offered in evidence the certificate aforesaid, to which was attached the application for membership signed by said Thomas, and which contained the stipulation with respect to suicide as stated in the plea. She then proved that said Thomas died August 29, 1893, and offered in evidence a call made on him August 10, 1893, for an assessment by the secretary of the National Union, and a receipt therefor dated September 9, 1893. The defendant having previously admitted that all dues and assessments of said Thomas had been paid, objected to the admission of said call and receipt as irrelevant and insufficient to show a waiver of the defence of suicide. The court overruled the objection, and admitted the paper as evidence tending to show payment of dues, when required, but cautioned the jury that it was not to be considered as evidence of waiver by defendant of its defence of suicide.

Defendant then offered proof tending to show that it was a fraternal beneficial society, without capital stock, and governed by certain by-laws that were in force at the time said Thomas joined the order as well as at the time of his death.

The governing body is called the Senate. One by-law contains the suicide clause aforesaid. Another regulating proofs of death reads as follows:

" Sec. 1. On the death of a member in good standing the president of the council shall appoint a committee of three (the president and secretary to be ineligible) to view and

identify the remains (when possible), ascertain the cause of death and circumstances attending the same. The report of such committee and the proof of the death shall be forwarded to the secretary of the Senate by the president and secretary, under the seal of the council, in accordance with a form furnished by the secretary of the Senate; such report must state the name, age at date of initiation, the number of benefit certificate, the date and cause of death, and the amount paid into the benefit fund, and membership rate. Further proof of such death may be required if deemed necessary by the president of the Senate.

"Sec. 2. On receipt of such official report of the death of a member and on approval of the president and medical director, the secretary of the Senate shall draw an order on the treasurer of the Senate in favor of the person or persons named in the benefit certificate for the amount due on said death, and forward the same to the treasurer of the council of which the deceased was a member."

The defendant then offered in evidence certain papers, which, upon objection of the plaintiff, were excluded. These are (1) a report of the proper officers of the local council, as provided in the by-laws, certifying all the facts concerning the membership and standing of the said Thomas, and the date of his death. The cause of death is given thus: "Pistol shot wound (self-inflicted)." (2) The report of the said examining committee made to their council September 26, 1893, in which they represent the death as caused by suicide. (3) The disapproval of the death claim endorsed on said proof by the medical director of the appellant. (4) The report of the president to the secretary of the Senate declining to approve the claim. (5) The certificate of the attending physician of deceased that the death was caused by a pistol shot wound in the thorax penetrating heart and lung, and stating mental aberration as probably having had influence in causing the death. Exception was duly taken to the exclusion of the foregoing.

Plaintiff then produced, in pursuance of notice, and defendant read in evidence a letter written to appellee, October 16, 1893, by the secretary of the local council informing her of the refusal of the president to pay the claim, and enclosing a copy of his letter to that effect, which showed the cause of refusal to be the suicide of the said Thomas within two years after joining the order.

Defendant then offered in evidence a copy from the record of the coroner of the District of Columbia, of entries made by him showing the date of death and the cause thereof as suicide. The said coroner held no formal inquest, with the aid of a jury. The said coroner was also health officer of the District, and a report made by him, in that capacity, showing the same cause of death, was also offered. Both records were excluded, upon objection of the plaintiff, and exception was taken to the ruling. The court, however, said that the coroner, being present as a witness, might use the records to refresh his memory if he wished.

Defendant next offered to prove by the said coroner, who is a physician and a surgeon, and by the surgeon who was called in, that, from examinations made by them of the body, the wound and the surroundings generally, they were of the opinion that the deceased had committed suicide. This was also excluded, upon plaintiff's objection, and exceptions noted.

Defendant next read in evidence a record of the criminal court, showing that on March 22, 1889, deceased had been indicted for embezzlement of money of the United States, arrested and admitted to bail. The last entry, dated August 3, 1889, showed an order for a bill of particulars, on motion of the defendant. No subsequent action seems to have been taken.

Proof was then made by defendant as follows: "That immediately prior to the date of his death the said Thomas had been immoderately indulging in intoxicating drink and had been suspended from his employment as a cashier at

Harvey's restaurant because of his intemperate habits; that on the day before his death he reported at Harvey's and was sober, but the superintendent told him that Mr. Harvey was away and had left orders not to let him (Thomas) go to work until he (Harvey) returned, and that Harvey would be back the following Monday, and that Thomas replied, ·'I cannot face the old man,' and went away; that Thomas had been employed as cashier at Harvey's for two or three years; that his accounts were all right, and there was nothing against him at Harvey's except his use of liquor; that about four o'clock on the afternoon of August 29, 1893, the said Thomas was found unconscious and in a dying condition, undressed and in bed in a room on the second floor of the house where he lived, lying partly on his right side near the front of the bed, on the right side of the same, with his arms by his sides, with his pistol lying diagonally to the right towards the foot, on the floor, about eight feet away, and that the said Thomas had a pistol-shot wound through the heart, which entered his body a little below the left nipple, and that the bullet passed through the heart and lodged within about two inches of the spinal column, and that the undershirt of the said Thomas was slightly discolored where the bullet passed through, and that said Thomas was unconscious when found and remained so until his death; and that on the day prior to his death the said Thomas had expressed a dread of the coming of the next ensuing first of September."

Defendant having rested, the plaintiff offered evidence to the effect that deceased "was in the habit of carrying a revolver, and that he always placed the same under his pillow at night, and that the said revolver had a hammer and was self-cocking and of cheap construction and make; said revolver was identified by the plaintiff and introduced in evidence; and that the night prior to his death the said Thomas was at home in a sober condition and in a cheerful frame of mind, and that on the day of his death he was at home

and in bed and the day was hot, and in the afternoon he lay down, taking off his clothes except his underclothes. His wife passed his door while he was lying down, and he complained of a sharp pain in his side. She passed downstairs and some time after, about half-past four o'clock in the afternoon, she heard him scream and heard something like metal strike the floor." Plaintiff's father (who died before the trial) was the first person to reach the room.

*Mr. Alvan T. Tracy* and *Mr. Guion Miller* for the appellant:

1. The appellant is a fraternal beneficial society, and had full power to make all necessary rules and regulations for the management of its affairs and prescribe the conditions upon which its benefits should be awarded. *Golden Rule* v. *Ainsworth*, 46 Am. Rep. 334; Angell & Ames Corp., Sec. 325; Bliss Life Ins., Sec. 463; *Durien* v. *Verian*, 7 Daly, 188; *Relief Assn.* v. *Auley*, 2 Mack. 70; *Rood* v. *Ben. Assn.*, 31 Fed. 62; *Miller* v. *Assurance Assn.*, 6 Cent. R. 324; *Society* v. *Burford*, 70 Pa. St. 321; *Van Poucke* v. *Society*, 6 West. R. 132; *Moss* v. *Littleton*, 6 App. D. C. 201.

These rules and regulations are as binding upon the beneficiary as upon the assured. In order, therefore, to entitle the beneficiary to the fund it was requisite that all the regulations be fully complied with. The approval of a death claim by the president is made a condition precedent to recovery. This requirement is reasonable and valid, not against public policy, forms a part of the contract, and the president's action becomes final unless fraud or mistake is shown. *Campbell* v. *Insurance Co.*, 1 MacA. 246; *Van Poucke* v. *Society*, 6 West. R. 132.

The laws of the order provided for the particular method by which the fact and cause of death should be proven, upon which the president was to act. This was made by the contract of the parties conclusive, where, as in this case, there is no taint of fraud or concealment. *Van Poucke* v.

*Society*, 6 West. Rep. 132; *Rood* v. *Ben. Assn.*, 31 Fed. 62. The proofs of death having been regularly forwarded and disclosing the fact that the death was suicidal, the president had no alternative but to reject the claim. More than this, the beneficiary was duly advised of the action of the president, and did not deny that the proofs correctly stated the cause of death nor offer any evidence that the death resulted from other causes, nor demand payment of the claim.

When a beneficiary is duly advised that the proofs of death filed according to the laws of the order, shows a loss from some cause expressly excepted from the contract, such beneficiary has no standing in a court of law until he has submitted or tendered other proof to show that the loss was occasioned in some other manner, and has made a formal demand for the payment of the claim. *Campbell* v. *Insurance Co.*, 10 Allen, 213; *Bank* v. *Insurance Co.*, 122 Mass. 165; *Worsley* v. *Wood*, 6 Term, 710; *Irwing* v. *Insurance Co.*, 1 Bosw. 507.

2. The undisputed evidence proved that Thomas' death was self-inflicted, and there was no evidence which would justify the jury in finding that his death was the result of accident, while on the contrary, the evidence abundantly proved that he committed suicide. The jury should therefore have been instructed to find for the defendant. It is admitted that if Thomas committed suicide, whether sane or insane, the plaintiff could not recover. *Bigelow* v. *Insurance Co.*, 93 U. S. 284; *Streeter* v. *Accident Society*, 8 West. R. 183; *Golden Rule* v. *Ainsworth*, 71 Ala. 436.

3. Under the circumstances of this case the receipt could not constitute a waiver, and should not have been admitted in evidence. *Insurance Co.* v. *Wolff*, 95 U. S. 326; *Busby* v. *Insurance Co.*, 40 Md. 572. Considering the evidence in this case establishing suicide, it may readily be supposed that the jury rendered their verdict for the plaintiff solely upon the theory that there had been a waiver by the defendant of this defence. The admission of this immaterial evidence makes out a different case from that of *District of Columbia*

v. *Wilcox*, 4 App. D. C. 121, as the error was not corrected in the charge, but was rather intensified by the rejection of the defendant's prayer, and it presents a case where a failure to instruct constitutes error. *Thorwegan* v. *King*, 111 U. S. 549; *District of Columbia* v. *Gray*, 1 App. D. C. 506; *United States* v. *Bank*, 15 Pet. 377.

4. The court should have permitted the defendant to introduce in evidence the official notice and proofs of death of Thomas forwarded to the defendant. These proofs were in the usual form, and were forwarded according to the requirements of the laws of the order. They are made a condition precedent to the right to recover. *Campbell* v. *Insurance Co.*, 1 MacA. 246. Being provided for by the laws of the order, and being a part of the contract, they become clearly admissible (*Mutual Bank Ins. Co.* v. *Newton*, 22 Wall. 32); and if admitted they would have been *prima facie* evidence of suicide. *Walters* v. *Insurance Co.*, 65 Cal. 417; *Insurance Co.* v. *Higginbotham*, 95 U. S. 390; *Mut. Ben. Assn.* v. *Hoffman*, 110 Ill. 603; *Day* v. *Insurance Co.*, 1 MacA. 599.

5. The coroner's records should have been admitted in evidence. The coroner is a public official recognized by law. The great object of his examination, if not the sole object, is to ascertain the cause and manner of death. He must ascertain whether a felony has been committed, and in cases of sudden and violent death the first thing that he is called upon to learn is "how did the party come to his death." That is then the object of the investigation which he is required to make, and the result of this investigation he is required by law to record. Such records, so made, are always admissible in evidence. Greenleaf on Evidence, Vol. 1, pp. 483, 491–3 and 496; Stephen's Digest of Evidence, p. 91, Art. 34; *Wallace* v. *Cook*, 5 Esp. 117.

7. Upon the showing made in this record the "burden of proof" as to the accident should have been placed upon the plaintiff and the onus of proving suicide should not have

been placed upon the defendant. The general issue was pleaded by the appellant. This put the appellee upon proof of such a state of affairs as would entitle her to recover. The contract expressly excluded any liability on the part of the appellant if Thomas committed suicide. It was necessary, therefore, for the appellee to show affirmatively that the death did not come within that exception. *Geach* v. *Ingall,* 14 M. & W. 95 ; *Ashley* v. *Bates,* 15 M. & W. 589. The evidence clearly shows that the wound was self-inflicted, and there is no claim to the contrary, and this would throw the burden back on the plaintiff, even if it were not already there. *Insurance Co.* v. *Peters,* 42 Md. 415. This would especially be true in view of the fact that the proofs of death furnished the appellant recited that Thomas had committed suicide. Furthermore, there was no evidence in the case from which the jury could find an accidental killing, and therefore the prayer in that particular was not properly supported by the testimony and should not have been granted. " Instructions to the jury, not based upon any evidence, and having no evidence to support them, are erroneous." *Keyser* v. *Hitz,* 133 U. S. 138 ; *Northern Pacific R. Co.* v. *Paine,* 119 U. S. 561.

*Messrs. Needham & Cotton* for the appellee :

1. The general issue simply put plaintiff upon proof of a *prima facie* case—that is, membership, payment of all dues up to the time of death, and proof of the death. *Casey* v. *National Union,* 3 App. D. C. 516 ; *Benefit Assn.* v. *Sargent,* 142 U. S. 691 ; *Insurance Co.* v. *Smith,* 124 U. S. 406 ; *Indemnity Co.* v. *Wood,* 73 Fed. 81 ; *Insurance Co.* v. *Rogers,* 119 Ill. 474 ; *Murray* v. *Insurance Co.,* 85 N. Y. 236.

Suicide, the single defence raised by the special plea, is a fact that must be established affirmatively by the defendant. 2 Am. & Eng. Encyc. L. 655, and cases cited ; *Employers' Assn.* v. *Rochelle,* 35 S. W. 869 ; *Insurance Co.* v. *Hayward,* 127 S. W. 36 ; *Leman* v. *Insurance Co.,* 15 So. 388 ; *Badenfield*

v. *Accident Assn.*, 154 Mass. 77; *Southerland* v. *Insurance Co.*, 54 N. W. 452; *Elmer* v. *Life Assn.*, 19 N. Y. S. 289.

No plea was filed alleging a want of sufficient proof of death; and therefore questions in reference to the presentation, the form, or the sufficiency of proofs, were not raised and could not be discussed in this case, under the pleadings. All questions of this character were waived when the defendant placed its refusal to pay and its special defence upon the sole ground of suicide. The rule is "that a distinct denial of liability and refusal to pay is a waiver of the condition requiring proof of the loss or death." *Insurance Co.* v. *Schneider*, U. S. Sup. Ct., L. C. 25, 694; *Insurance Co.* v. *Pendleton*, 112 U. S. 696; 13 Am. & Eng. Encyc. L. 658, and cases cited.

2. The question whether the act causing death was accidental or intentional could not be answered or proved by expert or opinion testimony. Suicide is defined by the Supreme Court as " the intentional taking of one's own life." *Insurance Co.* v. *Terry*, 13 Wall. 580; *Bigelow* v. *Insurance Co.*, 93 U. S. 284. So far as " intention" is concerned, the rules of evidence as to the admission of expert testimony are the same where one shoots himself or shoots another person. 7 Am. & Eng. Encyc. L. 491, 493.

To determine from a given state of facts what a sane man intended to do is strictly within the province of the jury, and must be determined by them. The opinion, therefore, must be that of the jury only. *Van Zandt* v. *Benefit Co.*, 55 N. Y. 169; *Insurance Co.* v. *Hayward*, 34 S. W. 799; *Haynie* v. *Baylor*, 18 Tex. 498; *Gardner* v. *State*, 90 Ga. 310; *State* v. *Vines*, 93 N. C. 493; *Clement* v. *Cureton*, 36 Ala. 120; *Cihak* v. *Klekr*, 117 Ill. 643; *Bank* v. *Koch*, 105 N. Y. 630.

3. The so-called "record testimony" offered by the defendant was clearly inadmissible. The entry made by the coroner was not that required by the statute, which contemplates the report and record of an inquest; and the law nowhere makes it his duty to make a report or record in a

case not calling for an inquest. But even had there been an inquest, the record would not have been admissible for the purpose for which this record was offered. *Insurance Co.* v. *Killgast,* 22 N. E. 467.

4. The proofs of death prepared by the appellant were not admissible, for the reason that there was no issue calling for the introduction of such proofs. The only issue was as to the moral character of the act causing death. In every well-considered case upon this point, where the issues were similar, the only ground upon which such proofs have been admitted is that they had been prepared by the plaintiff and were admissions or statements of the plaintiff, and admissible as such upon an offer by the defendant. *Insurance Co.* v. *Killgast,* 22 N. E. 467.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The condition in the by-laws of the association, expressly accepted by Ernest F. Thomas in his application, that no benefit should be paid upon his death, in the event that he should commit suicide, whether sane or insane, within two years from his admission to membership, is a valid one, and if proved would bar plaintiff's right of recovery. *Bigelow* v. *Berkshire Ins. Co.,* 93 U. S. 284. But the burden of proving that his death was suicidal was upon the defendant. Under the pleadings in the case and the contract as it appears in the record, the plaintiff made a *prima facie* case upon proof of the membership and death of the deceased and the refusal of the defendant to pay the stipulated benefit. *Casey* v. *National Union,* 3 App. D. C. 510, 516; *Home Benefit Association* v. *Sargent,* 142 U. S. 691, 693, 699.

2. The contract was to pay the beneficiary the stipulated sum "upon sufficient proof of the death of the said friend and upon the surrender of this certificate, provided always that the said friend shall be in good standing in this order at the time of his death." No form of proof of death was

required of the beneficiary, and she was under the implied obligation merely to give notice that the death occurred, and, possibly, also, to render a particular statement of the time, place and circumstances of the death if demanded of her. By-law 59, quoted above, made it the duty of the local council to inquire into the facts of death, and report them to the secretary of the Senate of the order. The beneficiary in the certificate had nothing whatever to do with this investigation and report and was under no obligation to see that it was made. *Millard* v. *Legion of Honor,* 81 Cal. 340, 348; *Lorschner* v. *Knights of Honor,* 72 Mich. 316, 329. Certainly no such obligation or duty is expressly imposed, and it cannot be implied under the familiar rule that the conditions of a policy of insurance are to be construed most strongly against the insurer, and in favor always of the insured. *U. S. Mut. Assn.* v. *Hodgkin,* 4 App. D. C. 516, 523.

The conditions in respect of the proceedings to establish proof of death and the liability of the insurer are essentially different from those involved in the cases cited on behalf of the appellant, namely, *Campbell* v. *American Pop. Life Ins. Co.,* 1 MacArthur, 246, and *Rood* v. *Mutual Ben. Assn.,* 31 Fed. Rep. 62. In the first of those cases, it seems that the insured had been a sufferer from the effects of intemperance. At any rate, there was an express stipulation that if, upon inquiry, the surgeon of the company should decide that the insured died from the effect of intemperance, or from a disease aggravated by intemperance, there should be no liability. In the absence of proof of fraud or misconduct on the part of the surgeon his conclusion was held to be binding. In the second case, it was expressly stipulated that all claims should be referred to the board of directors, whose decisions should be final. This was held to be a valid agreement to refer the matter of liability to arbitration, and hence the conclusion of the said board could only be impeached upon the same grounds as any other award.

3. But had the policy, or certificate, contained a stipulation

10 Ct. App.—20

defining the form of proofs of loss and making the presentation of the same, by the beneficiary, a condition precedent to her right to recover, there would be no error in the ruling of the court. Having made its own examination into the cause of the death of the member, the defendant, without calling for any statement from the beneficiary, distinctly and unequivocally repudiated its liability under the contract. " The weight of authority is in favor of the rule, that a distinct denial of liability and refusal to pay, on the ground that there is no contract, or that there is no liability, is a waiver of the condition requiring proof of the loss or death. It is equivalent to a declaration that they will not pay, though the proof be furnished." *Knickerbocker Life Ins. Co.* v. *Pendleton,* 112 U. S. 696, 709.

4. The whole of the evidence has been recited in the preliminary statement, and facts and circumstances appearing therein without contradiction, tend strongly to show that the deceased intentionally killed himself. Yet, after much consideration, and not without some difficulty, we are constrained to hold that the court did not err in refusing to direct the jury to return a verdict for the defendant. Taking into consideration that the burden of proof was upon the defendant on this issue, we are unable to say that the proof was so certain and conclusive that all reasonable men must necessarily infer therefrom that the death was the result of design instead of accident. *Insurance Co.* v. *Doster,* 106 U. S. 30, 32; *Conn. Mut. Life Ins. Co.* v. *Lathrop,* 111 U. S. 612, 615 ; *Railroad Co.* v. *Carrington,* 3 App. D. C. 101, 109, and cases cited. The facts and circumstances of this case, tending to compel the inference that the deceased committed suicide, are not stronger or more persuasive than those of the two following cases, in each of which the majority of the court held that that they were properly submitted to the jury. *Casey* v. *National Union,* 3 App. D. C. 510 ; *Home Benefit Association* v. *Sargent,* 142 U. S. 697–700.

5. After the defendant had admitted that the deceased

had paid all dues and assessments on account of membership, the court might well have excluded, as wholly unnecessary, the receipt for the last call made upon him and paid by plaintiff. But as the jury were instructed then and there, that the receipt did not constitute evidence of a waiver of the defence to the suit, no possible injury therefrom could have been sustained by the defendant.

No further question of waiver was made in the case, and it was neither necessary nor important to reinstruct the jury on the point. Hence, there was no error in refusing the special instruction of the defendant to that effect.

6. Having already held that the plaintiff was under no obligation to see that proofs of death were made under the requirements of by-law 59, and that she was not bound to offer them, when made, as a condition of recovery, we must further hold that they were not admissible as evidence against her when offered by the defendant.

She neither subscribed said proofs when made, nor offered them to the defendant. Indeed, it appears from the bill of exceptions that they were never even shown or submitted to her. There is not a fact in the record that tends to afford the slightest foundation for their competency as admissions of the plaintiff.

7. The next assignment of error is founded on the exception taken to the exclusion of the coroner's report when offered in evidence by the defendant.

We are not called upon to decide whether, in a case like this, the verdict of a coroner's jury approved and entered of record by him in his official capacity, would be admissible as evidence of the manner and cause of death. That such a record is competent evidence has been held by the Supreme Court of Illinois. *U. S. Life Ins. Co.* v. *Vocke,* 129 Ill. 557. In *Evanston* v. *Gunn,* 99 U. S. 660, 666, it was held that the official record of the weather observer at Chicago was admissible in evidence to show the condition of the weather upon the day that plaintiff received the injury,

which was the subject matter of her suit.   In considering the effect of that case, however, it must be observed that the fact proved was not the issue of the case, but a mere incident thereof, and was also one of a character like, for example, the market price of articles of commerce at a time in the past, which it has been held may be proved by the private entries of disinterested persons dealing therein at the time.   *Cliquot's Champagne,* 3 Wall. 114, 141.

The record offered in evidence is not that of an inquest held in due course of law.   No jury was summoned, and yet the verdict of a jury, regularly empaneled in accordance with law, is the essential foundation of a coroner's finding and efficient official record.   4 Am. & Eng. Encyc. L., p. 177 *et seq.*   It is the coroner's duty to inquire into cases of violent or suspicious death and determine whether it is necessary to hold an inquest.   In this case he evidently did not think it necessary, and his report is not that of the inquest contemplated by the law.   Compiled Statutes D. C., p. 113, Chap. 14, Sections 1 and 2.

The record of the report made by the same person as health officer is subject to the same objection, and need not be separately considered.

We think that both, even if official records in a certain sense, are governed in respect of their competency and effect as evidence by a former decision of this court.   *Prigg* v. *Lansburgh,* 5 App. D. C. 30, 36.   Hence there was no error in their exclusion.

8. The next exception is to the refusal of the court to permit the defendant to prove by the coroner and the other surgeon who saw the body shortly after the fatal shot had taken effect, that, in their opinion, the deceased fired the same with the intention to kill himself.   We think the evidence was properly excluded.   The subject-matter of the proposed inquiry was the very one that the jury had been empaneled to try.   The facts showing all the conditions and surroundings, as seen and testified to by these witnesses and others,

were before them.   They were capacitated to draw a reasonable inference therefrom without the aid of experts.   The effect of admitting the opinions of experts, under such circumstances would be to influence rather than to aid the jury in forming an opinion.   *Van Zandt* v. *Mut. Ben. Life Ins. Co.*, 55 N. Y. 169, 179; *Milwaukee, &c., R. Co.* v. *Kellogg*, 94 U. S. 469, 474; *District of Columbia* v. *Haller*, 4 App. D. C. 405, 413.

9. There was nothing in the last assignment of error. Plaintiff introduced the witness Mary Green, and asked her if deceased said anything the evening before his death concerning his arrest and trouble with the department in 1888. She was then asked to state what he said.   Defendant objected to this statement, which plaintiff's counsel said was to the effect that the prosecution had been settled and was out of the way.   They further said their object was not to prove that a settlement had been had, but to show that the mind of deceased was not disturbed by the apprehension of prosecution.

The court sustained defendant's objection, and then excluded the evidence that had been given by the witness.   To this exclusion defendant objected and took an exception. This statement of the witness was clearly offered as introductory of the proof of the excluded statement.   To let it remain for the consideration of the jury would have led to a false impression and have worked the grossest injustice to the plaintiff.

Having examined every point made in the bill of exceptions and found no reversible error, we must affirm the judgment, with costs; and it is so ordered.

*Affirmed.*