WESTERN TELEPHONE MFG. CO. v. AMERICAN ELECTRIC TELEPHONE CO. et al.*

(Circuit Court of Appeals, Seventh Circuit.  April 12, 1904.)

No. 976.

1. PATENTS—INFRINGEMENT—TELEPHONE SWITCH BOARDS.

The Fisk patent, No. 521,461, for a telephone switch board, in which the fallen annunciator or drop is restored to its latched position automatically by the insertion of the connecting plug into the jack, was not anticipated in the prior art, and discloses invention.  Also *held* infringed by the device of the Overshiner patents, Nos. 617,691 and 617,692.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

Appellant, owner of letters patent No. 521,461, June 14, 1894, to Fisk, for a combined annunciator and spring jack for use in telephone switch boards, failed in its suit to hold appellees as infringers.  In the earlier form of switch boards a bank of annunciators or drops, serially numbered, was placed above a bank of spring jacks, similarly numbered, so that any drop was distant, say, two feet from the correspondingly numbered jack.  When a subscriber called, the operator's attention was attracted by the falling of the drop.  The operator thereupon established communication with the calling subscriber by inserting a connecting plug in the jack that bore the same number as the fallen drop. At the same time the operator manually restored the drop.

Figure 1 of the Fisk patent and the description and claims are as follows:

"My invention relates to switch boards for telephone exchanges and will be fully described hereinafter.

"In the drawings Figure 1 is a side elevation of a portion of a switch board embodying my invention.  Fig. 2 is a top view of the same.  Fig. 3 is a broken perspective, and Fig. 4 a detail.  Figs. 5, 6, and 7, respectively, are side, top, and perspective views of a modification, and Figs. 8 and 9, respectively, side and top views of still another modification.

"A is the bottom of a compartment containing the spring jack B, which latter is hollow and notched as at a, to receive the bent end of a superimposed spring, C, the rivets, C', securing the spring, C, to the jack passing down to

* Rehearing denied May 27, 1904.

the compartment and securing a strip, D, to it, while at the same time making a metallic connection between the spring and the strip. The spring is also formed with an arm or offset, c, that normally rests upon a pin, b, which passing through the bottom, A, connects strip D' to it. A spool, E, is secured to the bottom at the rear of the jack, and from the head of the spool are projected lugs, d, d, to which one edge of an armature, F, is pivoted, and from the upper portion of the opposite edge of this armature an arm, G, projects forward and at an acute angle to the width of the armature, and the outer end of this arm is formed with a lip, g, for engagement at the proper time with the bent flange, h, of a drop, H, to hold the drop up when the core of the spool is de-energized.

"The operation is as follows: When a call is made, the current from line goes through strip D, spring C, pin b, strip D', into the spool, and thence to the battery, thus energizing the core and causing the armature to be attracted and to pull the support from under the drop. The plug, K, is then inserted by the operator, and connection between spring C and strip D' broken, and the party called connected with the party calling through spring C, strip D, and plug. As the drop is released by the spool operating on the armature, it is lifted by the plug as it is inserted in the jack, for the drop hangs directly in front of the mouth of the jack, and is caught in its raised position and held up until another call is made, and the operator accomplishes in one motion what has hitherto required two motions.

"Having thus described my invention, what I claim as new, and desire to secure by letters patent, is:

"(1) The combination in a switch board of a jack, and a drop adapted to swing in front of it, an electro-magnet located in the rear of a jack, and an armature having a connection for catching and supporting the drop when it is raised by the entrance of the connecting plug as set forth.

"(2) The combination in a switch board of an annunciator drop adapted to hang in front of the jack and be lifted by the operator's plug as it is thrust into the jack, and a trigger or arm for catching it when so raised, and an electro-magnet and its armature and connections whereby the support is drawn from engagement with the drop when the magnet is energized as set forth.

"(3) The combination in a switch board of an electro-magnet, a jack located in front of it, and a drop hung in front of the jack, with a support for the drop when raised, and a connection between the support and armature for drawing the support from engagement with the drop when the magnet is energized as set forth."

Appellees' device is manufactured according to letters patent Nos. 617,691 and 617,692, January 10, 1899, to Overshiner, and is illustrated by the following drawing:

The record contains the following reference patents: 240,182, April 12, 1881, to Rein; 279,946, June 26, 1883, to Hazlet; 339,627, April 13, 1886, to Doolittle; 392,326, November 6, 1888, to Gould; and British 3,930, October 5, 1878, to McClure.

Josiah McRoberts and Charles C. Linthicum, for appellant.

Charles C. Bulkley, for appellees.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

BAKER, Circuit Judge. The main divide in this case, as presented in argument, lies along the line whether, as appellees insist, Fisk in-

tended the operator to use the plug as a tool with which to restore the drop while the operator was moving the plug to the mouth of the jack, or, as appellant contends, he conceived the idea of having the plug automatically and inevitably restore the drop by the plug's insertion into the jack. The expressions in the patent, "the drop * * * is lifted by the plug as it is inserted in the jack," "the drop * * * is raised by the entrance of the connecting plug [into the jack]," "the drop * * * to hang in front of the jack and be lifted by the plug as it is thrust into the jack, [and be held by] a trigger or arm * * * when so raised," leave no doubt in our minds that Fisk contemplated automatic restoration of the drop by the action of the plug during its insertion into the jack.

Did he disclose a practicable means for carrying this idea into effect? "Plug K" of the patent is nowhere specifically described or pictured. This omission and a comparison of the size of the jack opening with the distance through which the drop must be raised to reach the catch as exhibited in Figure 1, have led appellees to assert that the patent shows no way of restoring the drop through the action of the plug except by using the end of the plug to poke (as one might with his finger) the drop into its latched position before inserting the plug into the mouth of the jack. But the drawings are not required to be working plans. They must be read in connection with the description and claims, and any inferences arising from omissions or inconsistencies in the drawings must yield to a legally sufficient specification. "Many material objects and operations," says Robinson (vol. 2, § 491), "are so familiar to the inventor and his readers that their specific description, or even an allusion to them, would be superfluous. The law recognizes these difficulties in the way of an absolutely complete description, and overlooks the defects which they occasion, * * * though it omits appliances, modifications, or processes which persons skilled in the art would know were necessary and would themselves supply. Though it fails to describe implements and materials that are common in use, or methods of construction generally practiced in the arts, it may be complete enough to put before the already trained and informed intelligence of the reader an accurate and entire picture of the invention, from which he can understand it, construct it, and use it as easily as if all these familiar acts and objects were particularly described." The specification calls for a plug of such a form in relation to the form and location of the drop and jack that the mere act of inserting the plug into the jack will restore the drop to its latched position. Plugs with hafts to limit the thrust were common. It seems clear to us that any one who was familiar with existing switch boards and plugs, and who, on reading Fisk's patent, desired to embody the invention in the specific form of Figure 1, would see that the blade of the plug as it was thrust into the jack would not lift the drop into its latched position unless the bent portion of the drop were extended to equal the distance between the latch and the mouth of the jack, and that, if the drop were not so extended, the haft of the plug should be of a form and size to lift the drop into its latched position. That is, it would be purely a matter of the particular builder's choice whether he used the extension on the drop or on the plug or on both.

It is not denied that Fisk's device is useful and novel, and that the exercise of the inventive faculty was required in its production. The reference patents are claimed by appellees to limit the scope of the invention so as to save their device from infringing. Inasmuch as Fisk was the originator of the principle of restoring the drop by the contact therewith of the plug as it enters the associated jack, and the deviser of a practical embodiment of that principle, we deem the prior exhibitions of automatic restorations of the drop when dissociated from the jack, and accomplished by means dissimilar to the contact of the plug with the drop as the plug enters the jack, to be utterly irrelevant to the question of infringement, as they are confessedly insufficient as anticipations. If appellees are using Fisk's invention as it is defined in the patent, it is immaterial how much of the prior art they also employ. Appellees' drop is restored from a horizontal to a vertical position; Fisk's from a vertical to a horizontal, according to Figure 1 of the drawings. But in the description and claims there is no limitation upon the position of the drop except that it must be in front of the jack to the extent that the plug will lift it to its latched position as the plug enters the jack. Appellees' drop contacts with the plug through the cam projection on the drop. We have already stated that we regard it as immaterial whether the contact is effected through having the plug reach up or the drop reach down or both. We therefore find that appellees' device responds to the claims of the Fisk patent as we read it.

That Overshiner improved upon Fisk, and, indeed, developed an idea that never occurred to Fisk, is no warrant for using appellant's property without leave.

The decree is reversed, with the direction to enter a decree in appellant's favor for an injunction and an accounting.