**INTERNATIONAL STANDARD ELECTRIC CORPORATION v. MARZALL,**
Commissioner of Patents.

Nos. 10209–10211.

United States Court of Appeals
District of Columbia Circuit.

Argued March 16, 1950.

Decided July 12, 1950.

Wilbur K. Miller, Circuit Judge, dissented.

Mr. Paul Kolisch, New York City, with whom Mr. Ralph B. Stewart, Washington, D. C., was on the brief, for appellant.

Mr. E. L. Reynolds, Solicitor, United States Patent Office, with whom Mr. W. W. Cochran, former Solicitor, United States Patent Office, was on the brief, for appellee.

Before EDGERTON, WILBUR K. MILLER, and BAZELON, Circuit Judges.

EDGERTON, Circuit Judge.

These are appeals by the plaintiff from judgments for the defendant, the Commissioner of Patents, in suits under R.S. § 4915, 35 U.S.C.A. § 63, to obtain patents on calculating machines composed of relays, switches, and other parts similar to those used in automatic telephone systems. The matter has been here twice before. International Standard Electric Corp. v. Ooms, 1946, 81 U.S.App.D.C. 215, 157 F.2d 73; International Standard Electric Corp. v. Kingsland, 1948, 83 U.S.App.D.C. 355, 169 F.2d 890.

R.S. § 4888, 35 U.S.C.A. § 33, requires an applicant for a patent to file in the Patent Office a description of his invention "and of the manner and process of making, constructing, compounding, and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same * * *." At first, the Patent Office and the District Court acted on the theory that the pertinent art was the calculating-machine art, and held appellant's disclosures inadequate because they would not enable a person skilled in that art to make and use the inventions. On the first appeal we decided, in effect, that the pertinent art was the automatic-telephone art.

The District Court has now found that "None of the applications here involved contains a sufficient disclosure to enable an expert in the art of automatic telephony and telegraphy to make or use an operative device." It evidently follows, and the court found in effect, that the ordinary skilled worker in the art could not make and use

the device. This latter finding, at least, is plainly correct. In my opinion it is enough to support the judgment dismissing the complaint.

The statutory words "any person skilled in the art" have long been taken to mean what they say. As the Court of Customs and Patent Appeals puts it, "The generally accepted definition which has been applied as a working rule by the Patent Office as well as the courts over a long period of years * * * is to the effect that * * * 'any person skilled in the art' does not mean persons who excel their fellows in particular arts or sciences in which they are skilled, but merely men who have ordinary or fair information and skill in that particular line. Ex parte Kerr, 1884 C.D. 27; Pupin v. Hutin, 1902 C.D. 269." Application of Beach, 1946, 152 F.2d 981, 983, 33 C.C.Pa.Patents 815. As the Supreme Court has pointed out, one of the purposes of the patent law is to make sure "that the subject of the patent will be dedicated ultimately to the public." General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 369, 58 S.Ct. 899, 902, 82 L.Ed. 1402. In return for the monopoly that the government grants to the inventor for a term of years, he is to disclose enough about his device to bring it within reach of the public when his patent expires. A disclosure that would enable a man of exceptional training and experience in the art, but not a person of ordinary skill in it, to make the device might not serve this important public purpose. Persons wishing to produce the device when the patent expires might not be able to find such a man; in fact, there might be no such man. The statute therefore requires the applicant for a patent to describe his invention, and how to make and use it, so that "any person skilled in the art" can make and use it.

The cases of A. B. Dick Co. v. Barnett, 2 Cir., 288 F. 799, and American Stainless Steel Co. v. Ludlum Steel Co., 2 Cir., 290 F. 103, decided in 1923, are not to the contrary. In the Dick case the court said in 288 F. at page 801, "we are satisfied that there was not the least difficulty on the part of one with an elementary knowledge of chemistry and a fair practical workman, in making Fuller's stencil sheet after reading Fuller's patent." In the Stainless Steel case the court said in 290 F. at pages 107, 108, the "disclosure speaks directly to those whose business it is to make the steel, and not to the cutler who is to fashion it" and should not, therefore, be tested "by the light of a cutler's (rather underestimated) workaday knowledge."

It is not clear that appellant's disclosures would enable even a man of exceptional training and experience in the art to make the device. Appellant's witness Williams, an engineer of over 40 years experience in the telephone field, expressed the opinion that not only he but the average automatic-telephone engineer could build the device from the disclosures. But, as we held on the first appeal, "the court was under no obligation to accept * * * untested opinion as conclusive." International Standard Electric Co. v. Ooms, 81 U.S.App.D.C. at page 216, 157 F.2d at page 74. Even wholly uncontradicted testimony on matters of fact, as distinguished from opinion, is not always conclusive.[1] And Evans, an examiner in the Patent Office with 12 years experience in automatic telephony, testified that he could not build the device. It was for the judge who saw the witnesses and heard the testimony to determine its weight. Moreover, appellant's witness contradicted himself. In response to the question "Could you build it?"[2] he answered, "I think so. Yes, sir"; similarly, in response to the question "Why didn't you build one?" he said, "Your Honor, I didn't have time." To the contrary, he testified a few minutes later: "I wouldn't say I would be able to actually construct a machine."[3]

1. E. g., Quock Ting v. United States, 140 U.S. 417, 420, 11 S.Ct. 733, 35 L.Ed. 501.

2. I. e., "construct the inventions of the [appellant's] applications from the information contained in the descriptions and drawings of those applications."

3. He also contradicted himself in regard to the operativeness of the machine. He testified: "I was able to understand what the invention was and satisfy myself, and

■ Judge BAZELON agrees that, for the reasons stated in the preceding paragraph, we cannot say the court was clearly wrong in finding that the applicant's disclosures would not enable an expert in the art of automatic telephony to make or use an operative device. The judgment of the District Court is therefore affirmed. Judge BAZELON disagrees with me and agrees with Judge MILLER as to the meaning of "any person skilled in the art."

Affirmed.

WILBUR K. MILLER, Circuit Judge (dissenting).

Although my colleagues do not agree in all respects, they have joined in affirming the judgment appealed from by holding the District Court was not clearly wrong in finding as a fact "that the applicant's disclosures would not enable an expert in the art of automatic telephony to make or use an operative device." As I view the case, the appellant's proof clearly and undisputedly showed the disclosures of the application to be sufficient to satisfy the requirement of the statute; that being true, the District Court was clearly wrong in holding otherwise and its judgment should be reversed. Being strongly of this opinion, I feel it my duty to state somewhat at length my reasons for entertaining it.

These appeals involve identical issues and were briefed and argued as one. They bring before us for review judgments of the United States District Court dismissing the complaints of International Standard Electric Corporation in civil actions brought under the provisions of R.S. § 4915 to authorize and direct the Commissioner of Patents to issue three patents to International Standard, assignee of William Hatton. The applications therefor had been rejected by the Patent Office because it thought the disclosures insufficient.[1]

The inventions described and claimed in the Hatton applications are for electrical circuits to operate conventional automatic telephone switching devices so as to perform calculating operations, instead of their customary function of establishing telephone connections. As the District Court said, "Each of the applications here involved relates to a calculating machine of a very complex type, including numerous combinations of mechanical parts and of electrical relays and control circuits."

Twice before this appellant has appealed to us from orders of the District Court which refused relief concerning the Hatton applications, and twice we have reversed the judgments.

I shall summarize the history of these patent applications and the litigation concerning them, in order that the problem presented by the present appeal may be understood. When the applications were first filed in the Patent Office, they were referred to and examined by Division 23, which had to do with mechanical calculating machines. They were rejected by an examiner who, though "expert in the calculating-machine art but not in the automatic-telephone art, could not make head or tail of the descriptions. He thought they were therefore insufficient. The Board

---

I did, that the structure was operative," but he afterwards testified: "It may be assumed that such an application, the circuits are operative, or they wouldn't have been presented to the Patent Office, —I wouldn't make a study for operative —for detailed operativeness. I would go ahead and start and proceed to manufacture. * * * I am assuming that the device is operative as shown. To make a study to determine its operativeness would require perhaps several days."

1. R.S. § 4888, 35 U.S.C.A. § 33, which prescribes the particularity with which an applicant must describe his invention is, in pertinent part, as follows:

"Before any inventor or discoverer shall receive a patent for his invention or discovery he shall make application therefor, in writing, to the Commissioner of Patents, and shall file in the Patent Office a written description of the same, and of the manner and process of making, constructing, compounding, and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same; * * *."

of Appeals of the Patent Office agreed with him. It left undecided, as immaterial, the question whether the descriptions would enable an automatic-telephone man to make and use the inventions." [2]

Suits then instituted by the appellant under R.S. § 4915 were dismissed by the District Court, which found that the inventions "appertain" to the calculating-machine art and are not "most nearly connected" with the automatic telephone art; that the disclosures would not enable persons skilled in the calculating machine art to make and use the inventions; and that it had "not been established" that they would enable persons skilled in the automatic telephone art to make and use the inventions.[3]

Upon appeal from these orders of dismissal (the first appeal), we held that Hatton's devices appertain to or are most nearly connected with the art of automatic telephony and not that of the mechanical calculating machine; that, therefore, the Patent Office should have referred the applications, not to its mechanical calculating machine division, but to its division having to do with patents in the field of the automatic telephone, since the question was whether any person skilled in the latter art could construct an operative device from Hatton's disclosures.

Our opinion recognized that, although the disclosures had been held insufficient by a division of the Patent Office which could not have been expected to understand them, nevertheless the District Court could have, and should have, authorized the issuance of patents if the proof in the *de novo* proceeding before it had shown that an expert in the art of automatic telephony could understand and apply the disclosures. We held, however, that the applicant's proof had failed in that respect, and said, 81 U.

S.App.D.C. at page 216, 157 F.2d at page 74:

"* * * There was no evidence that any person skilled in the automatic-telephone art and not also in the calculating-machine art had ever shown, or said, that he could make the devices from the disclosures. Though a witness stated positively that such a person could do so, the court was under no obligation to accept this untested opinion as conclusive. The witness was an automatic-telephone expert who had substantial experience in the calculating-machine art; he was associated with the development of appellant's device long before the applications were prepared; and he was employed by a corporation affiliated with appellant. Accordingly the record supports the court's finding that the ability of automatic-telephone men to use the disclosures was not established."

Because the District Court had not had the benefit of the opinion of the Patent Office's automatic telephone division as to whether one skilled in that art could from the disclosures build an operative device, we thought "the ends of justice will be best served by remanding the case to the District Court with instructions to hold it until the Patent Office decides whether in its opinion that is the case."[4]

Accordingly, the cases were remanded to the District Court and were held there while the Patent Office referred the applications to its telephone division (16) to determine whether one skilled in the art of automatic telephony could build appellant's devices from the disclosures. The examiner held the disclosures were not sufficient to enable one skilled in that art to construct or operate the machine. The appellant was given no opportunity to be heard before the telephone division, and in his report the examiner specified no de-

---

2. International Standard Electric Corp. v. Ooms, 1946, 81 U.S.App.D.C. 215, 216, 157 F.2d 73, 74.

3. Cf. 81 U.S.App.D.C. at page 216, 157 F.2d at page 74.

4. We said, 81 U.S.App.D.C. at page 217, 157 F.2d at page 75:
   "Though appellant did not, in the District Court, discharge its burden of prov-

ing that a man skilled in the most relevant art or science could build appellant's devices from the disclosures, we think the ends of justice will be best served by remanding the case to the District Court with instructions to hold it until the Patent Office decides whether in its opinion that is the case."

fect in the descriptions or drawings and did not specifically find any facts. On appeal to the Board of Patent Appeals the examiner's action was approved and a request for reconsideration was denied. The Commissioner of Patents then moved the District Court to dismiss the complaint, and in support of his motion made the following statement which I regard as rather remarkable:

"It is the position of the defendant that proceedings herein are now closed and that all that now remains to be done is to issue a formal order to that effect. The Court of Appeals did not indicate that the cases should be reopened for further prosecution in this Court. It remanded them for one purpose only namely to be held until the Patent Office decided them. This has now been done and there seems to be no reason for holding them any longer."

The Commissioner obviously misconstrued our opinion on the first appeal, 81 U.S.App.D.C. 215, 157 F.2d 73. He seems to have thought the cases had been remanded to his office for final and conclusive determination as to the sufficiency of disclosure, which of course would have foreclosed and nullified the § 4915 proceedings pending in the District Court. But those cases were still pending for decision by the District Court, not by the Commissioner. If after remand to the District Court, the proper division of the Patent Office had found the disclosures sufficient, that would have been the end of it; but if the proper division should agree (as it did) with the improper division that the disclosures were insufficient, the District Court was to retry the § 4915 cases with that information before it.

When the Commissioner moved to dismiss, appellant countered by moving the court to reopen the cases to consider the decisions of the examiner of Division 16 and of the Board of Appeals, as well as to hear the evidence of an independent expert so as to "place the District Court in a position to find the facts which the Court of Appeals was seeking * * *." The appellant's motion was denied, that of the Commissioner of Patents was granted, and the complaints were dismissed.

Then followed the second appeal to this court. The judgments of the District Court were again reversed, because the Patent Office tribunals, after the remand of the cases, had failed to comply with R.S. § 4903, 35 U.S.C.A. § 51, and Rules 65 and 66 of the Patent Office Rules of Practice, 35 U.S.C.A.Appendix, in that the reasons for the rejection were not stated. The examiner merely said, "It is the opinion of the Examiner that the disclosure in this application is insufficient to enable a skilled worker in the automatic telephone art to construct an operative machine therefrom." In refusing to reconsider its affirmance of the examiner, the Board of Appeals of the Patent Office expressed its disagreement with this court's holding in the first appeal. Our opinion in the second appeal closed with this paragraph, International Standard Electric Co. v. Kingsland, 1948, 83 U.S. App.D.C. 355, 357, 169 F.2d 890, 892:

"Since, however, it appears it would be merely a matter of repetitive futility to again remand the cases to the Patent Office for compliance both with the law and its rules, since apparently it is unable to advance any reasons upon which its rejection was predicated, and since in any event we think the District Court was in error in refusing to hear applicant's proffered testimony of an *independent* expert in the field, and in denying its motion made for that purpose, and for the further reason that proceedings under R.S. § 4915 are *de novo*, the judgments are reversed and the cases remanded for further action in accordance with this opinion."

So, because both the Patent Office and the District Court had refused to hear an independent expert tendered as a witness by the appellant, we sent the cases back to the District Court for a third hearing, with instructions to receive the evidence of appellant's independent expert on the question whether "any person skilled in the art" could construct an operative machine from the disclosures.

This time the appellant presented the testimony of Samuel B. Williams, who undoubtedly is an expert in the art of auto-

matic telephony [5] but who knows nothing of the mechanical calculating machine art. He testified that he had examined the applicant's 78 pages of description and 27 drawings, obviously of a highly complex and technical nature, and said he could build an operative machine therefrom. He also said there are many average automatic telephone engineers, perhaps less expert than himself, who could construct the devices from the disclosures. He admitted his unusually broad background of experience might enable him to understand and apply the disclosures more quickly than could a less experienced automatic telephone engineer, but said his greater experience gave him no other advantage. Under searching cross-examination he demonstrated beyond peradventure that he understood the disclosures. On direct examination he described Hatton's invention in considerable detail.

The appellee introduced in opposition its examiner, Norman H. Evans, who had spent twelve years in examining applications for patents in the automatic telephone art and who "was closely associated with an automatic telephone exchange" during four years in the military service. Evans has had no experience as an engineer in the manufacture or construction of automatic switching circuits, and does not understand how shop or manufacturing drawings for the guidance of skilled workers in actual production are prepared by experts from patent drawings.[6] He understood the more than two hundred individual circuits described in the applications but did not understand "how the circuits joined together operate". Evans stated as his opinion that a man of ordinary skill in the automatic telephone art would not be able to understand the disclosures here involved. He did not say an expert automatic telephone engineer would not be able to understand them, and went no further than to state:

"* * * I am not skilled enough in the art and I do not believe anybody else is skilled enough that they (sic) can look at the picture and tell exactly what has happened."

After considering the evidence of Williams and Evans, the District Court again dismissed the complaints and the cases are before us on appeal for the third time.

I have carefully studied the testimony of the two witnesses and, for the purpose of comparison, here briefly recapitulate it: Williams, the only expert who testified, said that he and hundreds of other ex-

---

5. After receiving a degree at Ohio State University, Williams spent 41 years in the service of the Bell Telephone System as a telephone circuit engineer in the development and construction of telephone switching circuits for use in automatic telephone switching systems and computing switching systems. Since 1946 he has been a consulting engineer in private practice. He has read and studied the descriptions and drawings of more than two thousand United States patents to consider their worth and meaning from an engineering viewpoint. Most of the patents studied covered telephone switching circuits and switching circuits generally.

6. Williams clearly explained the difference between manufacturing drawings and patent drawings in this language:
   "* * * Patent drawings are directed to skilled personnel to illustrate the invention claimed, and to enable the engineer or person skilled in the art to reproduce the invention. To reproduce the invention doesn't mean he was il-

lustrating the invention. A manufacturing drawing is directed to the shop personnel, or the personnel that have to make the apparatus and put it together on a commercial basis, and the manufacturing drawings show a great deal more detail than is necessary for one skilled in the art to understand how the invention works.

"The manufacturing drawing must show exactly the type of apparatus to use, where it is to be mounted, how the wire is to be run from one place to another, what color, size, insulation to be used on the wires, where the ends of wires will be soldered, to what terminals, and quite a number of other things that are not needed to understand the theory of the invention, that are needed to put it together on a commercial basis."

This practice was referred to in Western Tel. Mfg. Co. v. American Elec. Tel. Co., 7 Cir., 1904, 131 F. 75, 77, where the court said, "* * * But the drawings are not required to be working plans."

perienced automatic telephone engineers could understand the disclosures and build an operative device therefrom. Evans, who is not an automatic telephone engineer, said he is not skilled enough in the art to understand the disclosures and that he does not "believe" any person is that skilled; his affirmative statement was that a man of ordinary skill in the automatic telephone art would not be able to understand the Hatton disclosures.

So the evidence in the record shows without real dispute that an expert automatic telephone engineer could construct an operative machine from the disclosures, but that an ordinary skilled worker in the automatic telephone art could not do so. It follows that whether the applicant has met the requirement of R.S. § 4888 by describing the invention so as to enable any person skilled in the art of automatic telephony "to make, construct, compound, and use the same" depends upon the meaning of the statutory expression "any person skilled in the art".[7]

So, the sufficiency of the applicant's disclosures depends upon the answer to the question, who is a person skilled in the automatic telephone art, for the purposes of these cases? Is he one who is skilled enough to understand and apply Hatton's description of his extremely complex invention, such as Williams and the other engineers of whom he spoke? Or is he the ordinary skilled worker in the automatic telephone art, of whom Evans spoke?

On this vital and decisive legal issue, the parties take divergent positions. On the one hand, the appellant insists that the requirement of the statute as to disclosures is met when it is proved that an expert can understand the disclosures and, from them, construct and use the machine. On the other hand, the appellee-Commissioner contends that the statutory expression "any person skilled in the art" refers to an ordinary skilled worker, and not to an ex-

pert; this is clear from the following statement in his brief:

"These cases, therefore, present a single, simple issue, namely whether the worker of *ordinary* skill in the automatic telephone art could build an operative machine on the basis of the disclosure of any one of the applications here involved. If he could, the appellant is entitled to a judgment; otherwise, the decision below should be affirmed." (Emphasis was given to the word "ordinary" by the Commissioner.)

The question may be stated in another way: how much or how little skill in automatic telephony must be possessed by the statutory man whose ability or inability to construct Hatton's devices from his disclosures determine whether patents will or will not be issued? The appellant says that because of the complexity of these inventions the statutory person must be and is an expert in the art. The appellee says the devices are unpatentable if the average worker cannot fathom them.

The truth is that "any person skilled in the art" is a relative expression. The degree of skill requisite in such person varies directly with the complexity of the invention; the more technical and complicated the device being described, the greater the degree of skill requisite to understanding the disclosure and constructing the machine therefrom.

This was convincingly stated and clearly held in A. B. Dick Company v. Barnett, D. C.S.D.N.Y., 1922, 287 F. 573, 577–578, an infringement suit, where it was said:

" * * * The phrase is always relative. Some patents are addressed to mechanical problems of a minor order. It may well be that the man skilled in the art in such instances may be even a journeyman. But this stencil art really concerns itself with large production, running into thousands and hundreds of thousands of sheets, and in such an art, where chemical ingredients

---

7. The Commissioner of Patents recognizes this, for he correctly says in his brief, " * * * The sole issue now before the Court is whether or not any person skilled in the art could make and use a machine on the basis of the disclosure of any one of the Hatton applications here involved." That has indeed been the issue from the beginning of this protracted litigation.

or units are employed, it would be quite deterrent of inventive enterprise if it were held that the chemist was too high in the scale, and that if one below that equipment were to fail, then the patent which the chemist found operative must be held to be inoperative, because the court has reached down far enough to find that one not a chemist is the 'man skilled in the art.' "

In the same case on appeal, 1923, 288 F. 799, the Second Circuit took occasion to discuss at some length the sufficiency of a disclosure "under the well-known language of R.S. § 4888." The court said in 288 F. at page 800:

"The lack of fullness, clarity, and exactitude in the disclosure is sought to be demonstrated by defendant by the production of a number of witnesses, who declare themselves quite able to make good stencil paper, but unable to produce, by following the instructions of the specification, either the plaintiff's commercial product, the defendant's infringing article, or, indeed, anything else worth having. The inference from this is that, since the witnesses were men 'skilled in the art' and said they could not 'do the trick,' nobody could, and therefore the patent is bad. Abstractly put, and put as a 'question of law,' it is urged that the patent must be bad if the disclosure does not instruct men of very ordinary capacity, or at most workmen of a journeyman's skill, how to embody the concept of the patent."

The following paragraphs of the opinion appear in 288 F. at page 801:

"Therefore all the remarks of chancellors as to the meaning of the phrase 'man skilled in the art' are illustrations and incidents, not precedents. They frequently illustrate the personality of their utterer rather more than anything else. We are of opinion that it is advisable to remember first how very easy it is not to do a thing, and how small is the step from not wanting to do a thing to declaring that it cannot be done. This has been dwelt on innumerable times, but never more concisely than by Coxe, J., in Rynear v. Evans, C.C., 83 F. 696.[8]

"We further think that, in judging the sufficiency of a patent disclosure, it is necessary to consider, not only the art to which the invention may be assigned, but its relation to other and especially older arts, and the nature of the alleged new thought. It is upon the difficulty, obscurity, or even novelty of the art concerned that depends the kind and degree of skill or knowledge which must be possessed by those who assume to apply it."

The Second Circuit reiterated its Dick Company holding in American Stainless Steel Co. v. Ludlum Steel Co., 2 Cir., 1923, 290 F. 103, 107, by saying:

"We have recently considered the meaning of the phrase 'man skilled in the art,' and concluded that it is always a relative term, and that no absolute definition of its meaning can be laid down as matter of law, because the query as to who is the man skilled in any particular art is itself a question of fact and one having regard to the patent under consideration. A. B. Dick Co. v. Barnett, 2 Cir., 288 F. 799."

The holding of the A. B. Dick Company case was referred to, with approval, by this court in Radtke Patents Corp. v. Coe, 1941, 74 App.D.C. 251, 260, 122 F.2d 937, 946.

In accord is Toledo Rex Spray Co. v. California Spray Co., 6 Cir., 1920, 268 F. 201, 204-205, where the following will be found in the opinion:

"*As to the Second Objection:* We are convinced from the testimony that the disclosure is sufficient to enable one skilled in

. In Rynear Company v. Evans, C.C.S.D. N.Y.1897, 83 F. 696, 697, the court said: " * * * The complainant has endeavored to demonstrate that this testimony is untrustworthy, and its expert has introduced a series of experiments to show that the method described by the defendant is incapable of producing a seamless cap. That the complainant's expert should prove the defendant's method inoperative is not surprising. An experience of 14 years in patent litigation has convinced the court that when an expert undertakes to prove that his adversary's process or machine is a failure he always scores a success. It is much easier to make a machine that will not work than one that will."

the art to practice the invention. It is true that conditions of temperature, quality of the ingredients used, and perhaps other elements, require care and to some extent experimentation to produce the best results. But the disclosure is addressed to those skilled in chemistry (Minerals Separation, Ltd., v. Hyde, supra, 242 U.S. [261] at pages 270, 271, 37 S.Ct. 82, 61 L.Ed. 286), and we are impressed by what seems to us the greater weight of the evidence that the disclosure is ample for those so skilled."

I think we should approve the A. B. Dick treatment of the term "any person skilled in the art" and agree with the other cases to which I have referred, because I am unwilling to suppose Congress intended to deny patentability to an invention on the ground that it is too complicated and technical for a worker of average skill to understand. That would indeed be a deterrent to inventive enterprise, and would make mediocrity of ability in the reader the test of the sufficiency of the inventor's disclosure. Shop drawings and instructions, prepared from the patent drawings and disclosures by experts who understand them, guide the factory personnel—the ordinary skilled workers—in constructing unusually complex devices. The basic error, therefore, in the Commissioner's argument is the assumption that "any person skilled in the art" in all cases must be an *ordinary* skilled worker.

Which interpretation of the term "any person skilled in the art" did the district judge use in this case? Did he follow the Commissioner's erroneous concept that a patent should be denied to the inventor of a complicated device if his descriptions cannot be understood and applied by one of merely ordinary skill in the art to which it appertains? Or did the judge test the evidence under the correct rule of the A. B. Dick case that the statutory term is relative, and that the disclosure is sufficient if it be shown that experts in the art can understand it?

In my view there can be only one answer to those questions: the trial court adopted and employed the Commissioner's notion that "any person skilled in the art" must not

be more expert than an ordinary skilled worker. This is readily apparent from the court's memorandum opinion, which opens with this significant sentence:

"Plaintiff has clearly failed to sustain the burden of proving that a worker of ordinary skill in the automatic telephone art could build an operative machine on the basis of the disclosures of the applications here involved."

Moreover, in the third sentence of his brief opinion, the trial judge said:

" * * * Such evidence falls far short of convincing the court that a worker of ordinary skill in the automatic telephone art could build an operative machine on the basis of the disclosures; * * *."

And among the findings of fact prepared for the court by the solicitor for the Patent Office is No. 9, which reads:

"None of the applications here involved contains a sufficient disclosure to enable a worker of ordinary skill in the art of automatic telephony and telegraphy to make or use an operative device."

I suggest that the opening or keynote sentence in the memorandum opinion and the portion of the third sentence quoted above sufficiently demonstrate the trial court's reliance upon the theory that the person "skilled in the art" is, for the purposes of these cases, a worker of ordinary skill, even without considering finding No. 9. If the District Court had adopted the A. B. Dick criterion, there would have been no occasion for the opinion's references to the clear failure of proof that a worker of ordinary skill could understand the disclosures; for under the rule of the A. B. Dick case that question is immaterial and is not one of the issues of fact. If the judge had considered the case in the light of what I think is the correct criterion set forth in the A. B. Dick opinion, he would have so stated and then would have confined his opinion to a statement of his conclusion concerning the true factual issue as to whether the evidence showed that experts can understand Hatton's descriptions. My opinion that the District Court applied the ordinary skilled worker test was shared by counsel for the Commissioner, else he

would not have written finding No. 9 to which I have referred.

So, in my belief, the real basis of the District Court's decision was the lack of proof that an ordinary skilled worker would understand and apply the disclosures. Of course there was no such proof. The appellant did not contend and did not seek to show that a worker of average skill in the automatic telephone art could build and use these machines from the descriptions in the applications. Its evidence was directed solely to proving that the disclosures were sufficient for an expert engineer in that field. In contrast, and in line with the Commissioner's contention, the appellee's proof went no further than to show that a *worker* of ordinary skill could not understand the applicant's descriptions. Consequently, if the ordinary skilled worker theory had been correct, the court's decision would be correct, as there was no evidence whatever to the effect that from the disclosures such a person could construct and use the machines. But since that was not the correct test, the court's judgment ought not to be affirmed unless the evidence permits and supports the conclusion that the disclosures are insufficient for an expert in the art.

I do not overlook finding of fact No. 8, which is as follows:

"None of the applications here involved contains a sufficient disclosure to enable an expert in the art of automatic telephony and telegraphy to make or use an operative device."

This finding has no rational basis in the evidence, for the only expert witness testified to the contrary, and no expert contradicted him. The fact that Evans, who is not an automatic telephone engineer and who admitted he is not skilled enough to understand the disclosures, did not "believe" anyone else could do so, does not furnish a rational basis for rejecting the testimony of Williams, the expert engineer, who stated unequivocally not only that he could build an operative device from the disclosures, but that many other engineers skilled in the art could do so.

I think, therefore, that the statement of the memorandum opinion that "the expert evidence offered by plaintiff is insufficient to show that an expert in the automatic telephone art could build an operative machine on the basis of the disclosures" is not supported by, but is contrary to, the only evidence on the subject, and is clearly wrong. For that reason, the judgments of the District Court should be reversed.

I gravely doubt, however, whether the district judge intended to make the holding which I have just quoted, and the fact that finding No. 8 flatly makes the same statement does not convince me the judge himself intended to do so. There is no evidence whatever in the record to support any such finding. I know from experience, as does every lawyer, that many district judges do not critically examine findings of fact prepared by counsel for the successful party; but that, after indicating their views orally or by memorandum opinion, they leave to the lawyers the preparation of the findings of fact. In order to learn what the trial judge actually had in his mind, it is much safer to consider his own language in his memorandum opinion than to rely on the findings of fact; particularly is this true when, as here, the crucial finding of fact does not have an unequivocal basis in the court's opinion.

For the purpose of analyzing the memorandum opinion of Judge Letts, it is here reproduced in its entirety, with the sentences numbered and paragraphed for convenient reference:

1. "Plaintiff has clearly failed to sustain the burden of proving that a worker of ordinary skill in the automatic telephone art could build an operative machine on the basis of the disclosures of the applications here involved."

2. "The court holds that the expert evidence offered by plaintiff is insufficient to show that an expert in the automatic telephone art could build an operative machine on the basis of the disclosures."

3. "Such evidence falls far short of convincing the court that a worker of ordinary skill in the automatic telephone art could build an operative machine on the basis of the disclosures; expert opinion to the contrary is without support in the evidence."

4. "The Solicitor for the United States Patent Office will submit for settlement findings of fact, conclusions of law and a judgment form dismissing the several complaints which have been consolidated for the purpose of trial."

I venture the suggestion that the word "insufficient" in the second sentence of the opinion is there because of a typographical error and that the word the court intended to use is the word "sufficient". A genuine basis for this suggestion is found, I think, in the first three sentences of the opinion. First, the court said flatly that the applicant had "clearly failed to sustain the burden of proving that a worker of ordinary skill" could build and operate a machine from the disclosures. The use of the word "burden" indicates to me the judge thought such proof essential to the applicant's case. Thus he adopted the Commissioner's theory, and therefore held the applicant had the burden of proving that *an ordinary skilled worker* could understand the disclosures.

Having employed that test, there was no occasion to add, as the second sentence apparently does, that applicant's evidence did not show that an expert in the art could understand and use the disclosures. And, if the court had intended to make such a statement in the second sentence, it is hard to see why he would have written in the next sentence, "Such evidence falls far short of convincing the court that a worker of ordinary skill in the automatic telephone art could build an operative machine on the basis of the disclosures; * * *." Certainly it was not necessary to say that evidence which is insufficient to show that an expert could understand the disclosures "falls far short of convincing the court that a worker of ordinary skill" could do so. If the proof does not show that an expert can understand the descriptions, why add that such insufficiency of proof fails to show that a non-expert can understand them?

Moreover, the opinion immediately and correctly points out there is no evidence whatever to the effect that a worker of ordinary skill could build the devices. On the other hand, under my hypothesis that the word "insufficient" was inadvertently typed when the word "sufficient" was intended, the first three sentences of the opinion (which really constitute the entire opinion) form a consistent whole, and rational meaning is given to the third sentence and to its opening words, "Such evidence"; for then the court is seen to say substantially this:

"The plaintiff had the burden of proving that a worker of ordinary skill could understand and use the descriptions, and he clearly failed to sustain it. Plaintiff's evidence does show that an expert in the art could construct the machine from the disclosures, but that is not the test, and such evidence falls far short of convincing the court that a worker of ordinary skill in the automatic telephone art could build an operative machine on the basis of the disclosures."

Of course, I have no way of knowing what Judge Letts really intended to say in the second sentence of his opinion. He is a jurist of great ability and long experience for whom I have profound respect, and I do not believe he would write the second sentence as it now appears and then add the queer conclusion that "Such evidence" (evidence that the disclosures are insufficient to instruct an expert) falls far short of convincing him that the disclosures were sufficient to instruct one who is not an expert.

But, as I have indicated, if I am wrong in assuming a typographical error was made, and if the trial judge did intend to hold not only that the disclosures were insufficient to enable an ordinary skilled worker to construct and use the machine, but also that an expert could not understand them, I am of the view that the latter of the two conclusions is without support in the evidence, is contrary to it, is clearly wrong, and should be reversed.

If I believed, as my colleagues do, that the holding apparently expressed in the second sentence of the memorandum opinion is not contrary to the evidence, is not clearly wrong and therefore cannot be reversed, I would advocate that an opinion be written pointing out the possibility that the second sentence does not correctly state Judge Letts' view of the evidence for the reasons which I have stated, and that there-

fore finding No. 8 may not be expressive of the court's actual finding; and that the cause be remanded so Judge Letts may say what the fact is and whether finding No. 8 was intentionally made.

There is not present here the strong presumption of correctness, spoken of in such cases as Abbott v. Coe, 1939, 71 App.D.C. 195, 109 F.2d 449, which arises when a Patent Office decision is concurred in by the District Court after a *de novo* hearing under § 4915; for the evidence of Williams was not heard by the examiner but was presented for the first time in the District Court, so the Patent Office made no finding with respect to it. Moreover, since the District Court's decision is clearly wrong, it is not saved from reversal by the presumption of correctness which attaches to a trial court's determination of factual questions.

Reference should be made to certain other arguments of the Commissioner. For example, the appellee insists Williams was not an *independent* expert because he had testified theretofore in other cases at the instance of counsel now representing appellant, and expected to do so in the future; that, therefore, under our ruling on the first appeal, his evidence furnished no basis for decision. But Williams was not, as was the expert introduced at the first trial, an employee of a corporation affiliated with appellant; nor had he been associated with the development of appellant's device, whereas the first witness had been so associated long before the applications were prepared. It should not be said that a consulting engineer is not independent if he had ever before testified as an expert at the instance of the attorney who then retains him, and if he expected to testify as such in the future in other litigation. If that were true, a patent attorney would be forced to get a new and different expert witness for every case in which he appears.

The Commissioner also complains that, unlike Williams, Evans did not have a preview of a Hatton machine. Nor did Williams, as I shall show; but Evans had the right under Patent Office rules to call for a model of the machine if he considered it necessary in order fully and readily to understand the precise operation of the machine. He did not ask for a model. Williams did testify that he had seen the machine, but he had done nothing more than casually look at the finished product. He did not examine its interior and did not see the hundreds of numerous and complicated circuits which enter into the invention. It was just as though he had looked at an automobile with the hood down, in which event it could hardly be said he had examined the engine.

Judge Bazelon shares my view that "any person skilled in the art" is a relative term and that, in cases such as these, the disclosures are sufficient if they show an expert how to construct and use the devices. He thinks, however, the judgments should be affirmed for the reasons given by Judge Edgerton in the last two paragraphs of his opinion. I turn, therefore, to a discussion of those paragraphs, conceding for the discussion only that there was no typographical error in the second sentence of the memorandum opinion and that Judge Letts intended to reject as unconvincing the evidence of Williams, the only expert witness.

We did say in the first opinion, 81 U.S. App.D.C. at page 216, 157 F.2d at page 74, "the court was under no obligation to accept this untested opinion as conclusive." Of course the reference was not to the opinion of Williams, who then had not testified, but to the opinion of another witness who "was an automatic-telephone expert who had substantial experience in the calculating-machine art; he was associated with the development of appellant's device long before the applications were prepared; and he was employed by a corporation affiliated with appellant." The opinion of that witness was therefore "untested". Having helped to develop the invention, it was impossible for him to say that, from the disclosures alone, an expert could learn how to build the machine; nor could he be said to be disinterested. Williams was a stranger to Hatton and his devices and, as I have shown, was a completely independent expert. If the suggestion be that an expert's opinion is "untested" and furnishes no basis for decision, even though it stands alone

and uncontradicted, merely because the expert has not actually built the machine before testifying, I disagree. If that were true, there would seldom be expert testimony in patent cases.

I have said that Williams was the only expert witness, thus indicating that Evans, the other witness, is not an expert in the field. Judge Edgerton says that "Evans, an examiner in the Patent Office with 12 years experience in automatic telephony, testified that he could not build the device", thus implying that Evans is an expert and that his inability to understand the disclosures tended to show that an expert could not do so. I have heretofore pointed out that Evans' 12 years experience has been as an examiner and not in actual practice in the art. The following excerpt from his cross-examination sufficiently shows, I think, that he is not actually an expert whose opinion ought to be given weight:

"Q. Mr. Evans, you spoke of your experience in the Patent Office and some work in the Army with a telephone exchange. Have you had any experience in the manufacture or construction of automatic switching circuits as an engineer? A. No, sir.

"Q. Do you know how the various companies and manufacturers operate in making up manufacturing drawings and instructions in this art, and when I refer to this art, I always speak of the automatic switching art? A. I am not acquainted with how they make them up, but I am acquainted with the final result.

"Q. You don't know how they go about getting it? A. No.

"Q. If I understood your testimony aright, there is nothing that you have found or now find specifically wrong with any of the 200-odd circuits that the Hatton application discloses. Your criticism is based solely on the fact that although correctly describing operative circuits, you just can't understand it; is that a fair statement? A. I do not understand the complete system, although I do understand the individual circuits."

In addition to the foregoing, I again suggest that Evans admitted he was not skilled enough in the art to understand this invention. So I say there is no contrariety of expert opinion as to the sufficiency of the disclosures.

Judge Edgerton's opinion says Williams contradicted himself. I quote from it:

"* * * In response to the question 'Could you build it?' he answered, 'I think so. Yes, sir'; similarly, in response to the question 'Why didn't you build one?' he said, 'Your Honor, I didn't have time.' To the contrary, he testified a few minutes later: 'I wouldn't say I would be able to actually construct a machine.' "

The second question and answer, which are said to constitute the contradiction, should be examined in their context. The witness had just said, "I have forgotten exactly how long it took me to go through this the first time, probably, oh, not over a day, maybe a half day", when he was asked the following question, "And at the end of that time [after half a day] you thought that you would be able to construct and operate a machine based on that disclosure; it that right?" It was then he answered, "No, I wouldn't say I would be able to actually construct a machine." He was plainly saying that his first reading of the disclosures, which took only a few hours, did not give him the understanding which he had after completing his study which took three days. He said, "I can't say I got everything from the first reading." He explained by adding,

"To proceed with the manufacture from then on would be merely a matter of converting the drawings from the patent type of drawing to the manufacturing type of drawing."

With respect to the contradiction charged to Williams in footnote 3 to Judge Edgerton's opinion, I think it sufficient to quote the following questions and answers from the cross-examination of Williams:

"Q. Do you feel that you now have sufficient knowledge to construct and operate a machine on the basis of this Hatton disclosure? A. Yes, sir.

"Q. Did you get that knowledge from your first reading of the application? A. No, I can't say that I got everything from the first reading, but I did understand the general organization of the system, and generally how it worked.

"Q. How much time did you have to put on it before you felt that you would be able to make the device of the kind described? A. If it were not for the fact that it is a United States application for patent, and it may be assumed that such an application, the circuits are operative, or they wouldn't have been presented to the Patent Office,—I wouldn't make a study for operative—for detailed operativeness. I would go ahead and start and proceed to manufacture.

"The conversion of the information from the patent form to the manufacturing form is a more or less manual mechanical detail which could be handled. It really involves converting the information from one form to another. I am assuming that the device is operative as shown. To make a study to determine its operativeness would require perhaps several days."

Surely it should not be said that the foregoing statements constitute such a contradiction as to discredit Williams and warrant the court in rejecting everything he said. It should be noted, too, that Williams had seen the machine operate (although he had not "lifted the hood" and examined the mechanism) and so had the right to assume operativeness.

The decision of the majority here seems to me to be erroneous. I would reverse and direct the District Court to enter judgments authorizing the issuance of the patents.