**UNITED INSURANCE COMPANY,**
Appellant,

v.

Cary NICHOLSON, Appellee.

No. 1720.

Municipal Court of Appeals for the
District of Columbia.

Argued Dec. 12, 1955.

Decided Jan. 24, 1956.

Frank J. Martell, Washington, D. C., with whom Richard W. Galiher and William E. Stewart, Jr., Washington, D. C., were on the brief, for appellant.

William A. Friedlander, Washington, D. C., with whom Abraham Bogorad, Washington, D. C., was on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

The life of Johnnie Cherry was covered by two policies written by United Insurance Company. One was a life policy with double indemnity for accidental death and the other an accident benefit policy. Both policies specifically excepted death resulting from self-inflicted injuries.

Cherry was serving a twenty-day term in the District jail on a charge of drunkenness. One night he was found dead in the men's washroom, lying at the base of an approximately seven-foot tile partition wall, his head approximately two and one-half feet from the base of the wall. An autopsy performed by the deputy coroner revealed a comminuted fracture of the frontal area of the skull. Investigation disclosed that dust had been disturbed in a small area on top of the partition over the place where the body was found. No one was present when the incident occurred and the guard on duty, who was only a short distance away at the time, reported no outcry or disturbance other than a noise which sounded like something striking the cement floor. The death was recorded as a suicide by the coroner on the official death certificate.

Cherry's father as named beneficiary in the policies brought this action and the insurance company resisted the claim on the ground that the death was a suicide. In a written opinion the trial court found for plaintiff, and the insurance company appeals. The fundamental question is whether the trial court erred in ruling that the death of Cherry was caused by accident rather than by suicide.

Plaintiff presented as an expert witness a physicist who testified that assuming the deceased was on top of the partition he could not, by deliberately propelling himself, have increased his rate of fall over that which would have been reached by a "free fall" without at the same time propelling himself further outward from the partition than the place where he was found. The general purport of his testimony, based on careful and somewhat elaborate scientific calculations, was that even if Cherry ever was on top of the wall, he had not deliberately propelled himself against the floor.

Testifying for the defense the deputy coroner, who had certified the death as a suicide, gave it as his opinion that it was "extremely improbable" that the injury to Cherry's skull could have resulted from a "free fall" from the top of the partition, and said that his "conclusion" was that Cherry had forcefully propelled himself from the wall.

There was testimony that Cherry was in jail because his father had refused to pay his fine. But a young woman testified that she had been seeing him daily for some six months, that he was happy and "full of fun", that they had shopped for furniture and placed a deposit on an apartment, and had made definite plans to be married.

We shall first dispose of claims of error relating to admission of evidence and burden of proof.

(1) One is that it was error to permit plaintiff's expert to testify in answer

to hypothetical questions based on assumed rather than established facts. We do not agree with this contention. At the time this testimony was given, evidence had already been presented showing the nature of the deceased's injuries and the circumstances surrounding his death. Photographs were also in evidence, indicating where the dust was disturbed and the body discovered. There was no direct evidence available to either party showing what actually happened, and it was within the judge's discretion to govern the scope of the hypothetical questions. See Fuchs v. Aronoff, D.C.Mun. App., 46 A.2d 701. That discretion was not exercised improperly.

■■ (2) Defendant argues the judge should not have excluded the opinion of the coroner that the insured committed suicide. In this jurisdiction the law appears to be that conclusions made by a coroner under the circumstances of this case are not admissible, whether made in the official death certificate or as a witness at the trial. New York Life Ins. Co. v. Miller, 65 App.D.C. 129, 81 F.2d 263; National Union v. Thomas, 10 App.D.C. 277. In both these cases the court held that the coroner may testify to any actual conditions observed by him, but when he has no direct knowledge of the actual facts, his opinion that death was suicidal is inadmissible where that is the very issue before the court. Other courts have taken the same position. Basham v. Prudential Ins. Co. of America, 232 Mo.App. 782, 113 S.W.2d 126; Welz v. Commercial Travelers Mut. Acc. Ass'n of America, 266 App.Div. 668, 40 N.Y.S.2d 128; Greenberg v. Prudential Ins. Co. of America, 266 App.Div. 685, 40 N.Y.S.2d 494; Carson v. Metropolitan Life Ins. Co., 156 Ohio St. 104, 100 N.E.2d 197, 28 A.L.R. 2d 344; Heffron v. Prudential Ins. Co. of America, 137 Pa.Super. 69, 8 A.2d 491. Even if admitted, it is clear the court would not have been required to accept the coroner's opinion. International Standard Electric Corp. v. Marzall, 87 U.S.App.D.C. 198, 184 F.2d 592; Obold v. Obold, 82 U.S. App.D.C. 268, 163 F.2d 32. It may be added that the coroner's certificate of suicide was already in evidence, and thus his verbal testimony to that effect would have been in a sense cumulative.

■ (3) Appellant says the court erred in ruling the burden was on the insurance company to "establish by an affirmative defense that suicide was the cause of death." There is substance in this contention. Unlike a plaintiff suing on an ordinary life policy with an exception to death by suicide, the beneficiary under a policy insuring against violent and accidental death has the burden throughout to prove by a preponderance of the evidence that the insured's death was in fact accidental. New York Life Ins. Co. v. Gamer, 303 U.S. 161, 58 S.Ct. 500, 82 L.Ed. 726. The presumption in favor of accident does not shift the burden of proof, but merely the burden of proceeding. Here, when plaintiff proved that the death was violent and external, the defendant's burden was merely to introduce evidence from which suicide could reasonably be inferred. New York Life Ins. Co. v. Taylor, 79 U.S. App.D.C. 66, 147 F.2d 297, and cases cited. The judge was, therefore, wrong in making the quoted statement; but earlier in his opinion he had stated the correct rule thus: "The burden of proof is upon the plaintiff-beneficiary in this case to prove that Johnnie Cherry met his death by accident." This was not a jury trial, and we are satisfied that appellant was not prejudiced by the judge's statement, because as we shall see in a moment he did not apply improper standards in deciding the case.

■ The question, as we have said, was whether Cherry died by accident or suicide. While the coroner testified it was "improbable" the injuries causing death could have resulted from a free fall, his testimony was controverted by plaintiff's expert. Absent other proof, it cannot be said that defendant's evidence did more than establish the ultimate facts of the case. These facts may have provided a basis for the inference that the deceased was at one time on top of the partition wall; but they provided no legal support for a valid inference that he made a deliberate and suicidal jump from that wall. Any such finding would have been sheer speculation. Conclusions may be

drawn by inference from established facts but not from other inferences, because conclusions so reached are merely conjectural. Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435; Kenney v. Washington Properties, 76 U.S.App.D.C. 43, 128 F.2d 612, 146 A.L.R. 1; Levy v. Vaughan, 42 App.D.C. 146; Weaver v. Baltimore & O. R. Co., 3 App.D.C. 436.

The answer in this case is not a simple one. A young man is found in the middle of the night with his skull crushed, on the cement floor of a washroom alongside a partition wall. He may or may not have been atop the wall. If he was there, he may have jumped or he may have fallen. Neither medicine nor physics furnishes a clear cut answer as to how he met his doom. The question of motive is also clouded by uncertainty: he had some reason for shame; but he had other reasons, seemingly stronger, for wanting to live. Under such circumstances a judge is not required to say "suicide" when the true answer may just as likely be "accident."

Affirmed.