Ronald E. COHOON, Sr., Appellant,

v.

UNITED STATES, Appellee.

No. 11905.

District of Columbia Court of Appeals.

Argued Jan. 3, 1978.

Decided June 6, 1978.

Kenneth M. Trombly, Washington, D. C., appointed by the court, for appellant.

Reggie B. Walton, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty. and John A. Terry and Mark H. Tuohey, III, Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Before NEWMAN, Chief Judge, and KELLY and MACK, Associate Judges.

PER CURIAM:

On December 13, 1976, appellant was found guilty of mayhem and malicious disfigurement (D.C.Code 1973, § 22–506), and cruelty to children (*id.* § 22–901). He was subsequently sentenced to concurrent terms of three to nine years on the charge of mayhem and malicious disfigurement, and one year on the charge of cruelty to children. This appeal followed.

Appellant argues that certain assertions and questions by the prosecutor were improper. Finding no judicial error, we affirm.

The evidence adduced at trial established that on March 7, 1975, appellant's seven-month-old son was being cared for by the appellant at home while the mother was at work. When the mother came home around 6:30 that evening she found the child in bed with a swelling on the side of his head. Appellant testified that he had been lifting the baby out of the crib when he accidentally dropped the baby to the floor. The baby was then taken to Washington Adventist Hospital, where he was examined and found to be in a semi-comatose and rapidly deteriorating condition. Because of the baby's critical state, two neurosurgeons, Doctors Joel Falik and J. David Cook, determined that immediate surgery was necessary. According to Dr. Falik, qualified as an expert in the field of neurological surgery, and Dr. David Breckbill, a pediatric neuroradiologist at Children's Hospital, the child's injuries were the result of his skull striking a flat surface at an accelerated rate of speed. In their opinion, the degree of acceleration necessary to produce the injuries was greater than, and inconsistent with, appellant's explanation of how the injuries occurred. Both doctors answered affirmatively the prosecutor's question as to whether the injuries were consistent with the child's being "thrown" or "smashed" against a flat surface. The defense presented the expert medical testimony of a neuroradiologist and a neuropathologist, who both expressed the opinion that the injuries in question could have been caused by a fall, particularly if appellant in attempting to grab the child had accidentally pushed him and increased his acceleration. Finally, the Deputy Chief Medical Examiner for the District of Columbia, a forensic pathologist, testified in rebuttal. It was his opinion that the force necessary to produce the child's injuries would be in excess of either a free fall or a falling motion with the added acceleration caused by pushing or trying to grasp the child. In response to a question by the prosecutor as to whether the injuries were consistent with the child's being swung, thrown or thrust onto a large, flat surface, the examiner responded that they were.

Appellant contends that the hypothetical questions asked by the prosecutor of the medical experts were based on facts not in evidence. He submits that the trial court erred in permitting the prosecutor to inquire whether the child could have sustained his injuries by being thrown, thrust or swung against a flat surface, because there was no evidence to support such a hypothesis. We disagree.

 It is not error to permit an expert to testify in answer to hypothetical questions based on assumed rather than established facts. *United Insurance Co. v. Nicholson,* D.C.Mun.App., 119 A.2d 925, 926–27 (1956). Each side has the right to elicit an opinion from such a witness upon any hypothetical reasonably consistent with the evidence. *Moyer v. Aetna Life Insurance Co.,* 126 F.2d 141, 144 (3rd Cir. 1942). At the time these questions were asked, each of the witnesses had been qualified as experts and had indicated their familiarity with the injuries in question; Doctors Falik and Breckbill were personally involved with the child from the time he was brought to the hospital, and the Deputy Chief Medical Examiner had examined the x-rays, read the reports from the other doctors, and had been present during the testimony given by the defense medical experts. Each witness testified as to the nature and severity of the injuries, the type of force required to cause them, and whether the explanation given by the appellant was consistent with the required degree of force. Having elicited opinions that appellant's explanation was medically implausible, it was reasonable and proper for the prosecutor to inquire whether an alternative explanation would be more reconcilable with the facts. Expert witnesses may draw inferences from the facts which a jury would not be competent to draw. The hypothetical questions asked here, and the responses given, were consistent with the role of qualified medical experts generally. McCormick, Evidence § 13 (2d ed. 1972).

 The scope and limitations of hypothetical questions must depend largely upon the circumstances of the individual case. *Fuchs v. Aronoff,* D.C.Mun.App., 46 A.2d 701, 702 (1946). The instant situation is not the type in which direct evidence will often be available; the only two parties involved are the appellant and a child too young to testify. This court has held that it is within the discretion of the trial judge to govern the scope of hypothetical questions, particularly where there is no direct evidence available to show what actually happened. *United Insurance Co. v. Nicholson, supra. See also Fuchs v. Aronoff, supra.* We cannot conclude that the trial court here abused its discretion.

Appellant also contends that two improper statements by the prosecutor, in opening argument and in the cross-examination of appellant, to the effect that the child was paralyzed for life as a result of his injuries, require reversal.*

These statements appear to be based on testimony by Dr. Falik that both before and after the child underwent surgery he exhibited a weakness in his left arm and leg which could be characterized as paralysis.

 We agree with appellant's contention that the statements were error. There is no evidence in the record regarding permanent paralysis. Dr. Falik was not asked nor did he volunteer an opinion as to whether the weakened condition of the child's left arm and leg would continue. That the child would be paralyzed for life is not a permissible inference to be drawn from the testimony in question. *See Tuckson v. United States,* D.C.App., 364 A.2d 138 (1976). Noting, however, that no objection was made at trial to either of the offending statements,

---

* During opening argument, the prosecutor stated:

> You will learn a little bit about the child. You will learn the ramifications from the medical testimony of the injuries he received that he will be paralyzed for the rest of his life.

During cross-examination, the prosecutor asked appellant:

> And, you're telling us that a child who'll be paralyzed for the rest of his life, a child that you brought into this world and didn't want, just happened to hit his head on the crib and—on the floor?

we conclude that they do not rise to the level of plain error. *Watts v. United States*, D.C.App., 362 A.2d 706 (1976). The applicable standard to be used in assessing prejudice resulting from prosecutorial misstatements is whether it can be said " 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.' " *Gaither v. United States*, 134 U.S.App.D.C. 154, 172, 413 F.2d 1061, 1079 (1969), *quoting* from *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). *See also Smith v. United States*, D.C.App., 315 A.2d 163, 166 (1974).

Here, in addition to the testimony of medical experts and the circumstantial evidence, there was testimony by appellant's two sisters-in-law concerning his relationship with his son. Both of the women testified that appellant had told them that he did not want his son because he preferred girls, and that in their presence appellant frequently addressed his son by the use of epithets. Both of the women had also seen bruises on the child's body on several occasions; in response to their inquiries appellant had either stated that he did not know how the child was hurt, or that the child had injured himself by falling off the bed or couch.

Viewing, as we must, the prosecutor's statements in the context of all the evidence presented, we cannot conclude that they may be said to have affected the verdict. *See Hyman v. United States*, D.C. App., 342 A.2d 43, 45 (1975).

Accordingly, the judgment appealed from is

*Affirmed.*