Jamon CUFFEY, Appellant,

v.

UNITED STATES, Appellee.

Nos. 00–CF–324, 04–CO–54, 04–CO–1633.

District of Columbia Court of Appeals.

Argued June 9, 2009.

Decided June 25, 2009.*

Jenifer Wicks, Washington, DC, for appellant.

John P. Gidez, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney at the time the brief was filed, and Roy W. McLeese III, and Elizabeth Trosman, Assistant United States Attorneys, were on the brief, for appellee.

Before REID and KRAMER, Associate Judges, and FARRELL, Senior Judge.

PER CURIAM:

A jury found appellant guilty of armed first-degree premeditated murder and unlawful entry, holding him responsible for

* This opinion, originally issued as a Memorandum Opinion and Judgment, is now being published by order of the court.

the stabbing death of Louis Clark as Clark lay sleeping in the upstairs bedroom of his girlfriend, Tameisha Fowler. According to Fowler, whose testimony was corroborated by several other eyewitnesses present in the house at the time, appellant entered the house, procured a knife, and repeatedly stabbed Clark, whom he had previously threatened to kill for having interrupted what appellant thought was a romantic relationship he still had with Fowler. Following the murder, appellant made repeated admissions to the killing to others, including his father.

■ On appeal, appellant mainly challenges the trial court's refusal to order the other four adult individuals in the house to give blood (or other body) samples to be compared with DNA belonging to the victim Clark that had been found on the jacket witnesses saw appellant wearing at the time of the killing. The trial court[1] did not err in concluding that the requested samples, which would have required a significant intrusion on the personal liberty of witnesses no one had linked to the commission of the crime, offered no reasonable possibility of supporting the defense hypothesis that the DNA of one or more of the others in the house might also have been found on appellant's jacket, together with Clark's blood and DNA.[2]

Most significantly, the FBI expert who testified stated that the remaining DNA on the jacket sleeve—*i.e.*, unknown DNA in addition to the clearly identified DNA of appellant and Clark—was so indeterminate that it would be consistent with the DNA of fully one in every three persons in the world. Appellant's proffered testimony that his own expert (whom the court had appointed for him and who did not dispute the finding of Clark's blood and DNA on the jacket) had calculated a somewhat more favorable ratio for possible inclusion of DNA of the witnesses on a *shirt* appellant allegedly wore during the stabbing, did nothing to weaken the FBI expert's conclusion that no identification could practically be made of the unknown DNA on appellant's jacket.[3] The DNA samples appellant sought from the witnesses thus offered no reasonable prospect of supporting the *"Winfield"* defense[4] he sought to present, one assisted by no additional proffer of evidence beyond the mere presence of the eyewitnesses in the house. In these circumstances, the trial court properly gave the nod to preserving the liberty or privacy interests of the witnesses concerned, instead of ordering production of DNA that promised no materiality, to guilt or innocence.

■ Appellant further argues that the court erred in denying his post-conviction request under the Innocence Protection Act, D.C.Code § 22–4133(IPA), to have the bloody shirt removed from Clark after the stabbing tested for possible DNA evidence.

1. The issue was ruled on first by Judge Abrecht, then again by Judge Keary to whom the case was assigned for trial.

2. The defense hypothesis depended on a proffer, to which appellant did not testify at trial (he had done so at an earlier trial resulting in a hung jury), that appellant entered the house after the stabbing and placed his jacket on the bed, where it picked up blood and DNA from Clark and a third person, the real killer. We observe that no claim is made that appellant's decision not to testify in support of the theory

was "caused" by the judge's refusal to order production of the witnesses' DNA.

3. For one thing, a witness testified that appellant had changed shirts after the stabbing, and the DNA that appellant's expert took from the shirt was not conclusively derived from blood, unlike Clark's DNA on the jacket. Moreover, a ratio of one-in-seventeen would still leave a staggeringly large number of candidates for inclusion.

4. *Winfield v. United States*, 676 A.2d 1 (D.C. 1996) (en banc).

(The FBI expert had not tested Clark's shirt because of his belief that the sheer amount of Clark's blood on it would mask the presence of DNA from any other contributor.) This argument fails for the same reason of speculation that defeated appellant's previous contention. Under the IPA, he had to demonstrate a "reasonable probability," § 22–4133(d), that DNA testing of Clark's shirt would help establish appellant's actual innocence of the murder. Instead, he proffered to the trial court only conjecture that comparison of DNA from the shirt with the samples tested by the DNA would yield exculpatory evidence. The court was not obliged to reopen the case for additional testing in these circumstances.

■ Finally, appellant argues that the testimony of a government witness, Jason Hall, should have been suppressed because the government learned of Hall's identity through a search of appellant's home that the trial court had ruled invalid. *See generally Oliver v. United States,* 656 A.2d 1159, 1172 (D.C.1995). Based on argument and evidentiary proffers, however, the trial judge found that the police had learned of Hall's identity independently of the unlawful search, and on the record before us we have no reason to disturb that finding. Moreover, any arguable error in the admission of Hall's testimony was harmless given the overwhelming evidence of appellant's guilt.

*Affirmed.*